UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| UNITED STATES ex rel.<br>M. KEITH HODGES<br>275 Garnett Hill Drive<br>Urbanna, VA 23175<br><br>BRINGING THIS ACTION ON<br>BEHALF OF THE UNITED STATES<br>OF AMERICA<br>c/o Jeffrey A. Taylor, Esquire<br>United States Attorney<br>555 4th Street, N.W.<br>Washington, D.C. 20001<br><br>-and-<br><br>c/o Eric H. Holder, Jr., Esquire<br>Attorney General of the United States<br>Department of Justice<br>10th & Constitution Avenue, N.W.<br>Washington, D.C. 20530<br><br>Plaintiffs,<br>v.<br><br>CVS Caremark Corporation<br>One CVS Drive<br>Woonsocket, RI 02895<br><br>Serve:<br>Registered Agent<br>Corporation Service Company<br>1090 Vermont Ave., NW<br>Washington, D.C. 20005<br><br>-and-<br><br>Blue Cross and Blue Shield Association<br>225 North Michigan Ave<br>Chicago, IL 60601<br><br>Serve:<br>Registered Agent<br>CT Corporation System<br>1015 15th St., NW, Suite 1000<br><br>Defendants. | COMPLAINT FOR<br>VIOLATIONS OF<br>FEDERAL FALSE<br>CLAIMS ACT<br><br>JURY TRIAL DEMAND<br><br>FILED UNDER SEAL |

## Complaint
(Federal False Claims Act)

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from the false claims made by CVS Caremark (Caremark) and Blue Cross Blue Shield Association (BCBSA). in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended.

2. The False Claims Act (hereinafter the Act), originally enacted in 1863 during the Civil War, was substantially amended by the False Claims Amendments Act of 1986 and signed into law on October 17, 1986. Congress enacted these amendments to enhance the Government's ability to recover losses sustained as a result of fraud against the Untied States and to provide a private cause of action for the protection of employees who act in furtherance of the purposes of the Act. Congress acted after finding that fraud in federal programs and procurement is pervasive and that the Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3. The Act provides for any person who knowingly presents or causes to be presented a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government, including attorneys' fees. The Act allows any person having direct and independent knowledge regarding a false or fraudulent claim against the Government to bring a private cause of action for himself and on behalf of the government to share in any recovery. The complaint is to be filed under seal for sixty days (without service on the Defendant during such sixty-day period) to enable the Government (a) to conduct its own investigation without the Defendant's knowledge, and (b) to determine whether to join the action.

4. Based on these provisions, Plaintiff/Relator, M. Keith Hodges, seeks to recover damages and civil penalties arising from Defendants' presentation of false claims to the United States Government specifically through the Office of Personnel Management pursuant to the Federal Employees Health Benefits Program, administered under the Federal Employees Health Benefits Law.

5.      Plaintiff, Keith Hodges, has direct and independent knowledge of the following conduct that violated the False Claims Act:

**PARTIES**

6.      Plaintiff Hodges is a resident of Urbanna, Virginia. At all times relevant herein, he has operated Gloucester Pharmacy. In this capacity, he gained direct and independent knowledge of the allegations contained in this Complaint.

7.      Defendant, Blue Cross and Blue Shield was awarded a contract with the Office of Personnel Management (OPM) to administer the Blue Cross and Blue Shield Association (BCBSA) government-wide Service Benefit Plan Federal Employee Program. Under this plan, BCBSA has provided health care benefits to the majority of federal employees and their dependents for over a decade. In 2007, BCBSA provided health care coverage under the FEP to approximately 4.7 million members. Pursuant to this plan, BCBSA is authorized to retain the services of a Pharmacy Benefits Manager (PBM) to administer the prescription benefit program available under the FEP.

8.      Defendant CaremarkCVS (Caremark) has acted as the PBM for the FEP since 1993.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to §§ *3729* and 3730 of Title 31, United States Code.

10.     This Court has personal jurisdiction over the Defendants because the Defendants regularly conduct business in the District of Columbia. In addition, OPM, which administers the FEP contract, is located in the District of Columbia.

11.     Venue is proper in this district pursuant to 31 U.S.C. § 3732 (a) because Defendants routinely transact business in the District of Columbia.

**BACKGROUND**

12.   For over a decade, BCBSA has won the OPM contract to provide health benefits to federal employees. The most recent contract is designated as CS 1039, and became effective on January 1, 2008.

13.   The Federal Employees Health Benefits Program Standard Contract, and the attachments, including the Service Benefit Plan that is incorporated by reference pursuant to Section 2.2 (a) of the contract, define the relationship between the Government and the Defendants.

14.   The FEP offers federal employees different options and plans to purchase prescription benefits. Under the most popular plan, known as Standard Option, prescriptions are a shared expense between the FEP and the covered employee.

15.   The employee pays 25%, and the FEP pays the remaining 75%, of the Plan Allowance for the prescription. This formula changed as of January 1, 2009.

16.   The Plan Allowance is the amount that the healthcare provider, including a pharmacy (hospitals and other facilities, physicians, and other covered healthcare professionals) receives for the covered service.

17.   In the case of prescriptions, most employees obtain their prescriptions from "preferred providers" that have negotiated and agreed with BCBSA and/or Caremark in advance to accept a specific fee for service as payment in full. This amount is the Plan Allowance.

18.   At page 118 of the Standard Contract for 2008, it states, "Our Allowance...is the negotiated amount that the Preferred Providers (hospitals and other facilities, physicians, and other covered healthcare professionals that contract with each Blue Cross and Blue Shield Plan, and *retail and internet pharmacies that contract*

*with Caremark)* have agreed to accept as payment in full, when we pay primary benefits." [Emphasis Added].

19. To be sure then, under the Standard Option, if the preferred pharmacy has agreed to accept $10.00 as payment in full for a hypothetical drug, then this is the Plan Allowance and the federal employee would be required to pay a $2.50 co-pay, with the FEP paying the remaining $7.50.

20. Under the terms of the contract, Caremark and BCBSA are paid a profit and/or service charge for providing these services, and this profit is defined in Appendix B to the contract.

21. Subsection (a) of Section 3.7 states:

> Any service charge negotiated shall be set forth in Appendix B and shall be the total profit that can be charged to the contract. The amount set forth in Appendix B shall encompass all profit (whether entitled service charge, profit, fee, contribution to reserves or surpluses or any other title) that may be included in major subcontracts in accordance with the provisions of FEHBAR 1631.205-80, Major Subcontractor Service Charges.

22. The contract by its terms does not provide or contemplate any hidden fees, or surcharges.

23. To make this plain, the contract specifically refers to FEHBAR 1631.205-80, Major Subcontractor Service Charges. This states:

> In a subcontract for enrollment and eligibility determinations, administration of claims and payment of benefits, and payment or provision of actual health services, and/or assumption of insurance risk or underwriting, when costs are determined on the basis of actual costs incurred or experience rating, *any amount that exceeds the allowable cost of the subcontract (whether entitled service charge, profit, fee, contribution to reserve, surplus, or any other title) is not allowable under the contract.* [Emphasis Added]

24. This subcontract as it applies to prescription benefits is based upon "actual costs incurred" or the plan allowance that is defined as the actual amount paid to the pharmacy.

As such, it is not permissible for the General Contractor or the Subcontractor to charge any sum above this amount.

25. Beginning in March, 2008, Keith Hodges became aware that both federal employees and the Government were in many instances paying more than their allowable share of the price of prescriptions. Instead of the employee paying 25%, often he was paying between 40% and 85% of the amount paid to the pharmacy. Moreover, he noticed that the Government mechanically paid three times the excessive amount reflected by the employee co-pay.

26. Using the hypothetical of the $10.00 prescription above, Hodges noticed that he was paid $10.00 but in fact the employee was charged $5.00, and the Government paid $15.00, for a total of $20.00. Since he was only paid $10.00, he could only surmise that Caremark and/or BCBSA was keeping the overage.

27. This became clear to him when one of his patients provided him with copies of forms known as EOB's or Explanation of Benefits. These forms show the patient co-pay and the FEP payment. The EOB does not show what the pharmacist is actually paid. With EOB's in hand, however, Hodges was able to compare the transactions with his own payment records. He conducted this review in approximately August 2008 and the results of his examination are demonstrated on Complaint Exhibit 1, attached hereto. The column entitled "Total Pharm" contains the Plan Allowance. Any time the patient pays more than 25% of this number, an overcharge has occurred. See column marked "Patient %."

28. Having determined that the Government payment was mechanically set at three times the co-pay, Hodges was able to then examine a broader sample of federal employee standard option prescriptions to determine if any patterns emerged. He looked at the federal standard option prescriptions placed in his pharmacy in October 2007 and October 2008. These represented over 1,000 prescriptions.

29.     The results of his analysis are reflected on Complaint Exhibit 2 and Complaint Exhibit 3.

30.     In October 2007, the federal employees and the Government were overcharged on generic prescriptions that represented 42% of the 598 prescriptions placed in that month by federal standard option employees. In October 2008, the federal employees and the Government were overcharged on generic prescriptions that represented 56% of the 598 prescriptions filled by federal standard option employees.

31.     These overcharges that Plaintiff/Relator Hodges noted described in paragraph 30 created an excessive profit for the Defendants that was not permitted by the contract. In October 2007, the excess amounted to $2,319.09, and in October 2008, it amounted to $2,593.27.

32.     These amounts are alarming when one considers that the FEP covered 55 million prescriptions in 2003. Assuming that the covered prescriptions remained constant at 55 million in 2006 through 2008, and applying the ratio of harm reflected in the survey conducted in October 2007 and October 2008, it is reasonable to conclude that the Government and the federal employees, have probably sustained a substantial financial damage as a result of this pricing scheme.

33.     The potential damages are reflected on Complaint Exhibit 4.

34.     The Defendants willfully, knowingly, or recklessly overcharged both the federal employees and the Government as reflected above because the pricing scheme was a violation of the clear terms of the contract. Moreover, in 2008, Caremark told the pharmacies not to tell the federal employee patients what the pharmacies were actually being paid. This shows an intentional effort to hide critical information from the federal employees.

## COUNT I
### (False Claims Act 31 U.S.C. §3729 (a)(1) and (a)(2))

35. Plaintiff Hodges alleges and incorporates by reference the allegations made in paragraphs 1 through 34 of this Complaint.

36. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729-32.

37. By virtue of the acts described above, the Defendants knowingly presented, caused to be presented and continue to present and to cause to be presented false or fraudulent claims for payment and reimbursement from OPM, an agency of the United States Government, by knowingly or recklessly billing the United States Government for prescriptions at a rate that exceeds the allowable limits imposed by the contract and applicable regulations.

38. By virtue of the acts described above, the Defendants knowingly made, used or caused to be made or used, and continue to make or use or cause to be made or used, false statements to obtain Federal Government payment for false or fraudulent claims because the Defendants falsely certified that their requests for payment and/or reimbursement for prescriptions covered under the Standard Option provision of FEP were reasonable, accurate and in compliance with the contract.

39. As set forth in the preceding paragraphs, Defendants violated 31 U.S.C.§3729 *et seq.,* and have thereby damaged and continue to damage the United States Government by their actions in an amount to be determined at trial.

## COUNT II
### (False Claims Act 31 U.S.C. §3729 (a)(3))

40. Plaintiff Hodges realleges and incorporates by reference the allegations made in Paragraphs 1 through 39 of this Complaint.

41.     This is a claim for treble damages and for penalties under the False Claims Act, §§ 3729-32.

42.     By virtue of the acts described above, the Defendants defrauded the United States by billing OPM when the billing was not in accordance with the applicable contract, rules and guidelines.

43. The United States, unaware of the falsity of the records, statements and/or claims made by the Defendants and in reliance on the accuracy thereof, paid for the aforementioned false claims because the Defendants intentionally or with gross disregard for the truth billed the Government (OPM) in a manner that was not in accordance with the applicable contract, rules and guidelines.

44.     By virtue of the acts described above, the Defendants willfully and knowingly defrauded the United States.

45.     By reason of these actions and payments, the United States Government has been damaged and continues to be damaged in substantial amounts. The exact amount of the damage is to be determined at trial.

## PRAYER

WHEREFORE, Plaintiff/Relator Hodges prays for judgment against Defendants as follows:

1.     That Defendants cease and desist from violating 31 U.S.C. § 3729, et seq.;

2.     That this Court enter judgment against the Defendants in an amount equal to three times the amount of the damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729 et seq.;

3.     That Plaintiff/Relator be awarded the maximum amount allowed pursuant to § 3729 (d) of the False Claims Act;

    4.    That the Plaintiff/Relator be awarded all costs and expenses of this action, including attorney's fees; and that Plaintiff/Relator recover such other relief as the Court deems just and proper.

Respectfully submitted,

ASHCRAFT & GEREL

By: *[signature]*
H. Vincent McKnight, Jr.
D.C. Bar No. 293811
2000 L Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 783-6400
**Attorney for Relator**